Thank you for convening in the afternoon so that we could arrange for this panel to hear the case when we weren't sitting in the morning. Okay, thank you. I appreciate it. Yes. Good afternoon to you. May it please the court, I am Donna Siegel-Maffa of the law firm Kessler, Topaz, Meltzer & Chek. On behalf of the plaintiff appellants, individually, and as the former representatives of the now decertified classes, that we're asserting claims against Global TelLink based on its unjust and unreasonable calling rates and fees for inmate calling services. Appellants seek the reversal of the district court's decision refusing to refer two central questions within the special competence of the FCC to the FCC under the doctrine of primary jurisdiction referral prior to ruling on motions to decertify the classes and for summary judgment. Because the district court did not do so, the decision that the district court made on the motions should be vacated. They were made without the benefit of FCC guidance and based on errors of law without recognition of the disputed facts in the record that precluded summary judgment in favor of GTO. This is abuse of discretion review, right, on this? With regard to primary jurisdiction, the 8th Circuit has not made a clear determination on that. They typically have seemed to use the de novo review, but only because they have said, well, we don't really have to resolve it. We realize there's an issue here. But our position is that under either of the standards, abuse of discretion or de novo, the primary jurisdiction referral determination should be reversed because it was not made by the court weighing the appropriate factors. And even with an abuse of discretion standard, if a court fails to give significant weight to the proper factors or commits a clear error of judgment in weighing those factors, then that's an abuse of discretion that merits reversal. In this case, with regard to primary jurisdiction, the plaintiffs' appellants asked the court to consider two questions that aligned directly with questions that the D.C. Circuit Court of Appeals had remanded to the FCC on its review of the FCC's 2015 order on inmate calling services. In that decision... Are you referring to the question whether deposit fees can be segregated between interstate and  That's one of the questions. There were two questions, Your Honor, yes. One of them was whether you can segregate fees that are related to interstate versus intrastate calling with regard to deposit fees. The other question that was remanded was for the FCC to determine which portions of site commissions are legitimate, are related to the provision of ICS, and therefore legitimate costs that can be recouped in rates and which are not. I thought their position now is that site commissions as a category are okay. They're a cost of doing business. Go ahead. The D.C. Circuit Court decision on that does have a sentence that says the calculus that the FCC used, that the categorically excluding on a wholesale basis site commissions as a cost is just not right. In their view, that didn't make any sense. That had been the longstanding position of the FCC and in fact the position on which the claim was certified because it provided a common question. But the D.C. Circuit went on to say we are remanding to the FCC to determine which portions of site commissions are related to the provision of ICS and legitimate and which are not. Leaving, making it clear that there was still a question that remained after the FCC had looked at this issue and that the FCC felt like, the D.C. Circuit felt that the FCC was the proper entity to consider that question and that the FCC was not in a position to say no portion of site commissions can be determined to be illegitimate and therefore not recovered in rates. One question I have is whether it would make any difference what the FCC might say prospectively. If this matter were to go to the FCC and they were to say, we think we can sort out interstate and intrastate deposit fees and we're going to set a limit on interstate deposit fees, why would that make any difference here if the rule wasn't in effect at the time over which you're suing? Since 2013, the FCC has said with regard to ancillary fees such as deposit fees, they must be cost-based related to the service that was being rendered. That order has been stayed all along, right? It hasn't ever really been in effect. That was the 2013 order that gave notice to providers when they originally did the interim rates on FCC on rates. It said in that very same order, and we're also putting you on notice that even if you have compliant rates, you may still violate Section 201 if your fees are not directly related to the costs of providing those fees. I'm asking, was that order in effect? Well, that guidance was in effect. I thought it was stayed. It was stayed. I think the regulations were stayed as to their applicability, yes. But I don't know that the guidance that they were, and that is in fact the very calculus that was used ultimately and was accepted in the final rule which the D.C. Because it didn't place interim rules in effect on that. It gave guidance as to how the court, how the D.C., how the FCC would analyze fees. I don't know what you mean by guidance. I mean either there was an FCC order that governed these rates or not. No, because if you look at cases like I believe it's Havens in the Third Circuit, it doesn't have to be a specific regulation that says this is improper. It can be the FCC articulating what the standard is that applies. And that's sufficient to be a predicate for a claim. So that's the predicate here. What's your authority for that guidance? I was referring to Havens in the Third Circuit. And if I don't have that cite with me, I will- The cite is in your brief, isn't it? I believe so, yes. The 2015 order never took effect at all, right? Tell me again if I'm wrong because I've been operating on these- No, the 2015 order- Never took effect at all. Right. I'm sorry. I understand that ICS providers are still acting as if they are regulated under the The class was certified on the deposit fee claim on the theory that costs- Fees that far exceed the cost of delivering the service would not meet the standard of Rule 201. That was consistent with FCC law. Generally, fees and rates must be cost-based. That's a general proposition. And it was consistent with the guidance that was provided in the 2013 rule that put the interim rates in place. Therefore, in the 2015 FCC rule, those rates were actually adopted and the D.C. Circuit said that such regulation of ancillary fees was justified as to interstate fees. However, until the FCC could articulate a method for segregating from interstate fees, that rule would not be in effect. I thought the whole key to your case before your time's gone was it was either all these site commission fees or none of them. You never have had a theory, I think, of splitting it up, right? Our theory of our case was, based on the pronouncements of the FCC, that site commissions were locational rents and therefore not properly considered costs of delivering service that they should not be included in the rates. And that was the position. So therefore, that's the common question. Is that right or is that not right? Our position is, though, that the change in the law has said, you know what, it's not true as to the whole site commission, but a portion of that site commission still, and that would be common, could be common, depending on what the FCC says, cannot be included because it's not legitimate. What that portion is at this point, we don't know. Is there still a common question now? Without the guidance from the FCC, how do we know that? And as to the class claim on the rate, that's why the district court should have asked for guidance. Because if it comes to pass that the FCC, either through remand or answering a referral question, says, oh, here are the portions, this is how we identify them, this is the criteria for it, and that still remains applicable on a class basis, then to decertify this class and deny people the relief they would otherwise be entitled to would result in an inconsistent, a determination that's inconsistent with the way the FCC ends up regulating this, and denies people relief for what has been generally recognized as rates that are high and present serious problems across the board, from the commissioner of the FCC to the D.C. Circuit, that's been something that's generally been recognized. So that always in favor of saying, well, let's get this question answered before we extinguish all of these claims. With regard to the individual FCA claims, individuals, there is no basis for granting summary judgment on those. There was no analysis. We have a full record where we have contracts. We have people who can testify in the negotiation process. We can have people who can say what the business case was for that. Unless you look at all of those things, how can you determine whether the rates were legitimately included the entire commission when you have a circumstance where the D.C. Circuit Court has remanded to the FCC a question, which portions are legitimate and which are not. So for the individuals, only if you assume everything in favor and infer everything, every outcome of law and every outcome of fact in favor of the defendant, which is not proper on a motion for summary judgment, do you resolve it in favor of GTL. With regard to the individual deposit claim, I do want to make the point that the individual who is the representative of that class made only interstate calls. And therefore, there is no segregation issue with him. And therefore, his claim should not have been dismissed. I mean, yeah, he should not have been dismissed on summary judgment. And it was a clear error of law because that is not what the D.C. Circuit Court opinion stood for. It did not allow for the recoupment of commissions in ancillary fees. In fact, it found justified the method that the commission used. And I think that I want to save a little bit of time for a rebuttal. So I think I'll sit down. Very well. You may reserve the balance. And Mr. Hull, we'll hear from you. Good afternoon, Judge Colleton. And may it please the Court. Derek Hull for GTL. Plaintiffs brought a nationwide class action based on an aggressive reading of legally shaky FCC orders. And when the D.C. Circuit invalidated that regime, the district court was not required to let the plaintiffs go to the FCC in search of new liability and class certification theories. Of course, for years you wanted to go to the FCC, right? Well, we wanted to go to the FCC because we knew that this entire legal regime was being challenged in the D.C. Circuit. And so we said to Judge Brooks, why don't we see how this shakes out in front of the D.C. Circuit before we start going down the path of expensive civil litigation? As it turned out, of course, the D.C. Circuit invalidated all these orders and brought their entire case. Did any of them ever take effect? The 2013 order was, as Your Honor said, stayed. There was a small part of it that was never challenged, and that part of it went into effect, the interim rate caps. The 2015 order was vacated in part by the D.C. Circuit, but the parts of it that were not vacated were then gone into effect, including the ancillary rate caps, ancillary fee caps, rather. I think it's important, though, to understand the difference between the 2013 order and the 2015 order. The 2013 order attempted to implement a regime where prices could not be higher than cost. So it was an at-cost regime. And before that even took effect, the D.C. Circuit immediately stayed it. The 2013 order was issued in September of 2013. It was stayed four months later in January of 2014. And to be clear, the at-cost regime is the regime that is the predicate for the plaintiff's claims. The plaintiffs then brought their claims after the 2013 order went into effect. As the ancillary fee cap, you say, has gone into effect after the remand by the D.C. Circuit. Was it ever in effect before then? It was not. And Mr. Hobbs, the only plaintiff that has brought a claim related to deposit fees, did not pay any deposit fees while those caps were in place. His claim, as I was about to say, is not that the GTL claim is that the fees cannot be higher than cost. That was the 2013 FCC regime that never went into effect, was then stayed, and then the 2015 ICS order superseded the 2013 order. And the FCC said, we're not going to do cost-based regulation. We don't require fees or rates to be at cost. Instead, we're going to impose a regime of caps, both on rates and on fees. And there's a big difference between at-cost and caps. The deposit fee cap as of 2017, after the remand to the FCC, is $3. If a provider can provide the deposit service for $0.50, they're still allowed to charge $3. There is no claim that it is unjust and unreasonable to charge in excess of actual costs and recover the $2.50 that the provider has made by charging the cap, even though the costs were $0.50. But that's exactly what Mr. Hobbs' claim was. So as to the summary judgment issue, it was absolutely correct to grant summary judgment for GTL on the deposit fee claim, because the deposit fee claim rested on an at-cost theory that the FCC had rejected. And not only that, the costs that the plaintiffs tried to calculate took no account of site commissions, and therefore their theory was completely inconsistent with the D.C. Circuit's decision in ICS. Did you say that the site commissions had to be considered in setting ancillary fees or just rates? The D.C. Circuit said site commissions are a legitimate cost of doing business as long as they are a condition of providing services at a facility. That's the limiting principle. And it said that without limitation. It didn't say you can only recover these site commissions through your rates. It didn't say that you can't recover them through your ancillary fees. And so Judge Brooks was entirely correct to read the D.C. Circuit decision as saying these site commissions are required by the government in order for ICS providers to provide service at these facilities. They are a legitimate cost of doing business. And if a provider, as the record supports here, is trying to recover those costs not only through their rates but also through their ancillary fees, that is legitimate under the Communications Act. Our expert had a very good illustration of the point. There was a situation in which GTL had to pay much higher site commissions to the government. The site commission went from and GTL said, well, we can't make a profit if we have to pay 80 cents of every dollar to the government. But the way we can make a profit is if we can increase the ancillary fees that we charge. Because revenue is revenue. And if we can have two streams of revenue that in combination cover the costs, including site commissions, then we can make this work. And that's exactly what they did. When the FCC set the $3 limit, did they explain whether that was designed to allow for recovery of site commissions? What the FCC said was that the ancillary fee caps were designed to prevent the providers from recovering site commissions. And the DC Circuit said site commissions are a legitimate No, I thought you said after the DC Circuit decision, the commission instituted a $3 cap. I'm sorry if I wasn't clear. The caps were instituted prior to the DC Circuit decision, but they never went into effect until they were reviewed by the DC Circuit and then remanded to the FCC. But then they went into effect. They did go into effect. So the FCC thinks that it's still a valid $3 cap, notwithstanding the DC Circuit decision about site commissions. The FCC's 2017, so the ancillary fee caps were part of the 2015 order. They were reviewed by the DC Circuit. The DC Circuit says site commissions are a legitimate part of doing business. It vacates the rate caps. It also casts doubt on the validity of the ancillary fee caps, but it does not vacate those. Instead, it remands them to the agency to determine whether the caps are valid and whether it can segregate interstate from intrastate fees. But as a technical matter, those ancillary rate caps, because they were not vacated, are in effect starting in 2017. Even though the theory behind them was you can't recover site commissions through the deposit fees? Part of the rationale for implementing these ancillary fee caps was that the FCC wanted to prevent ICS providers from recovering site commissions in any way. Do you think that to bring a civil action like this, the plaintiff has to point to an FCC regulation that sets the just and reasonable fee in order to prevail? Absolutely. That's the Global Crossing Supreme Court case that we cite in our brief. I am familiar with the Havens case that my adversary raises. I don't think it's cited in the brief, but it actually is directly on point on this issue. The Third Circuit in the Havens case from 2016 said to have a claim under 201B of the Communications Act, you have to have a predicate FCC order that finds a practice unjust and unreasonable. What would be the order here if the 2013 order was stayed? Not only do the plaintiffs not have such an order, but their theory runs in the face of the FCC's abandonment of the at-cost regulations in the 2013 order. Remember the chronology here. The FCC issues its 2013 order, then the plaintiffs file their claim. Then the FCC says, forget about the 2013 order, we're superseding it with the 2015 order. The plaintiffs then try to reshuffle a little bit, but they're still pursuing, as Judge Benton said, this per se theory. I really think that that's a critical point. Judge Brooks lived through this case for four years, and he was told repeatedly by the plaintiffs that site commissions are per se unlawful to recover, and two, is that deposit fees cannot exceed the actual cost of processing, not including any site commissions. Both of those theories went out the window with the D.C. Circuit's decision. So the question, as I think my adversary concedes, is are they entitled now to say, we don't actually have a theory currently, we don't have a rule that says what portion of site commissions can be recovered, we don't have a rule that allows segregation of deposit fees, but we're hoping that the FCC might provide us with such a rule in the future. That doesn't work, one, because of the retroactivity point. Any such rulemaking will only apply prospectively under AT&T against FCC, the D.C. Circuit's decision in this case, and there are not the theories that the plaintiffs pursued throughout this litigation. And just as a district judge would be well within his discretion to deny an amendment to a complaint four years into a litigation when a plaintiff wants to pivot from a theory that's proved untenable to a theory that they now think may be tenable, Judge Brooks was well within his discretion to say, we're four years in, you to an agency in search of new and different theories. Given the protean nature of the FCC, with apologies to Shakespeare, in constancy thy name is FCC. And what are we to make of it? Are these people without any remedy? What's happened? Water under the bridge. Well, let me say a couple of things in response to that. One is it is true that the FCC has changed its position, and at the current moment, the FCC does not... Part of the FCC du jour, huh? It is the FCC du jour, and at the moment, the FCC does not think that the ICS regulatory regime that the prior administration put into effect is the regime that it wants to put into effect. So at the moment... So this is sort of the customer Cornelius Vanderbilt, the public be damned, I guess. Well, I think, you know, the agencies are allowed to change their position, and the current agency doesn't believe in these regulations. And this goes back to the need for a predicate. Need for what? The need for a predicate. There is no predicate right now. In other words, a civil plaintiff doesn't have the ability to come into a federal court and say, we would like a practice ruled unjust and unreasonable, even though the agency has never said as much. And that's exactly what the plaintiffs are trying to do in this case, because they have lost the predicate that they thought that they have. So the plaintiffs basically are at the mercy of the FCC, whatever that may be today. In other words, you can charge with the public... In other words, what remedy do these plaintiffs have as a practical matter? What remedy do they ever have? The FCC has decided as a matter of public policy not to what remedies they do have. I would highlight that the decertification decision in this case was actually quite charitable to the plaintiffs. Given the summary judgment rulings, the district court would have been well within its right to grant summary judgment against all of the classes. But instead, what it did was decertify the class, meaning there is no claim preclusive effect on any of the absent class members. And any of the absent class members would have been free, if they had wanted to, to go to the FCC and say, we think that there needs to be a new rulemaking, or we think that there needs to be a declaration. But on the question whether they're at the mercy of the FCC, if you want to put it that way, isn't that, bottom line, your position, that until the FCC regulates these rates, there's no predicate, as you put it, for a civil action? That's right, and that's appropriate because the FCC... We'll have to go to the FCC first and go ahead and say why it's appropriate. And it's appropriate because the FCC administers the statute, and the 201B standard of unjust and unreasonable rates is a very broad one. And so the courts, including the Supreme Court and the Havens case that I alluded to before, have said you first need to have an FCC order in your hand before you can go to a federal court and seek damages. What about the unjust enrichment claims? Could they be covered by that rationale, or is that a separate preemption analysis? I think, for one, the decertification issue on that, Judge Brooks was exactly right. Voluntary payments is a defense to unjust enrichment in all the states, and voluntary payments is an individualized issue that defeats class certification. On the merits, his preemption analysis, I think, was also exactly right. Voluntary payment, that's sort of a Hobson's choice, isn't it? Well, what Judge Brooks said, and I think this is exactly right, is that there were many instances, many people that had the option of making free calls or of avoiding the deposit fee altogether by paying through other means. Maybe there were people for whom it was a Hobson's choice, but there were lots of other people for whom it was a free choice. Stuff happens. How much can you pay for a phone call? The deposit fees, Your Honor. You only incur a deposit fee if you pay by credit card. You can pay by check. You can pay by money order. You can put money into the commissary account. There are lots of other ways that you can pay. This is basically a convenience for people, and Mr. Hobbs himself said, I just didn't want to be bothered with payment by credit card, and that was the only reason he paid the deposit fee. On preemption, if I could just say one more word about that. One word, I assume. Two sentences, perhaps. Unjust enrichment requires wrongful conduct, and the only wrongful conduct that plaintiffs ever alleged in this case was that GTL had violated Section 201B of the Communications Act by charging unjust and unreasonable rates. Without that hook, there is no viable unjust enrichment claim that simply says, I paid too much for my rates and fees, and I'd like my money back. So that is why the preemption at first come applies directly here. I think with the use of two semicolons, you were able to keep that to two semicolons. Thank you, Your Honor. We'll hear rebuttal. I'm going to go backwards. With regard to unjust enrichment, the unjust enrichment claim doesn't actually apply to the deposit fee claim because of the voluntary payment doctrine decision the Court made earlier. So we're only talking about the rate fee claim there. And with regard to the rate fee claim, there is no evidence in the record that people were generally able to just choose to get a free call versus a non-free call. The record shows, and we've cited that in our briefs, that at booking and at certain limited circumstances before becoming part of the general population, an individual might get some free calls. Therefore, the calls that our plaintiffs made when they were paying rates outside of those circumstances give rise to their, at least, to a 1B and what's a just and reasonable rate. No, because unjust enrichment is whether you know you've exploited your position to unjustly engage in conduct, to unjustly enrich yourself at another's expense. And we have, our claims are that because of the monopolies that GTL had, it exploited that position in order to extract more than they were entitled to. But how do you decide what they're entitled to? Doesn't that depend on whether the rates are regulated by someone? Because the FCA preserves state claims in Section 414, I think that the claim under the state unjust enrichment law would still be able to proceed. And that was held in James v. Global Telling. The court there allowed that individual claims at least to proceed. I wanted to address briefly the deposit fee issue because the 2013 order did not put into effect interim caps on deposit fees. It said we're just telling you, we're giving you fair warning that this is how we are going to interpret this statute. And that is a, that's allowed as a predicate. You don't have to have a regulation. And if you look at the global costing and the havens in the cases that were cited by my colleagues, you will see that there's no determination that you have to have a regulation. And you have to have a decision that, so people know are on notice. And they had it. That was not, it couldn't have been then stayed because it wasn't a rate cap. And when things are cost-based, they are cost-based with also allowing for fair compensation. And that's the way the FCC has approached it forever. And I don't think there was ever a time when they said you can only charge the cost of your ancillary services. And we presented a lot of evidence on the record as to why the deposit fees grossly exceeded the cost of the service. That has been our, that was our theory since the beginning. That's the theory that the district court relied on certifying that claim. And that's the theory that we would have presented to a jury. Our expert had a different analysis than their expert. Our expert looked at different comparators than their expert. The district court looked at none of that in determining that there was no fee, there's no claim based on the deposit fee. I see I'm over my time. Thank you for your attention. Thank you for your argument. We appreciate all counsel assisting with the